**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**John M. GIBSON, William R. Kidwell, Jr., Robert K. McBride, Steven W. Mathena, Charles F. Mehrer, III, John W. Lounsbury, Floyd R. Gibson, Gertrude W. Gibson, Joseph H. Peters, William L. Brooks, William R. Cockefair, Jr., Ewing L. Lusk, Jr., Paul F. Woodard, Hugh G. Hadley, L.H. Johanson, Jack L. Reddin, M.D., Annette N. Morgan, Personal Representative of the Estate of William B. Morgan, Deceased, and Campbell, Morgan & Gibson, P.C., Defendants.**

**Civ. A. No. 92–0140–CV–W–8–6.**

United States District Court, W.D. Missouri, W.D.

Aug. 30, 1993.

Clifford K. Stubbs, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Patrick D. McAnany, McAnany, Van Cleave & Phillips, P.A., Lenexa, KS, Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.A., David A. Vorbeck, Resolution Trust Corp., Kansas City, MO, Charles A. Getto, Lenexa, KS, for plaintiff.

Joel Pelofsky, Russell S. Jones, Jr., Robert R. Raymond, James C. Sullivan, Shughart, Thomson & Kilroy, Kansas City, MO, Daniel R. Young, Smith, Gill, Fisher & Butts, Kansas City, MO, Franklin T. Thackery, Daniel Lee Duncan, Martin M. Bauman, P.C., St. Joseph, MO, Patrick C. Cena, Thomas E. Deacy, Jr., Deacy & Deacy, Donald W. Giffin, Spencer, Fane, Britt & Browne, Peter E. Strand, Shannon Reynolds Spangler, Shook, Hardy & Bacon, James W. Humphrey, Jr., John B. Gillis, Kuraner & Schwegler, Glenn McCann, Knipmeyer, McCann, Smith, Manz & Gotfredson, David M. Harding, Van Osdol, Magruder, Erickson & Redmond, P.C., Michael J. Thompson, John G. Mazurek, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Patrick D. McAnany, McAnany,

Van Cleave & Phillips, P.A., Lenexa, KS, for defendants.

Steven W. Mathena, pro se.

## *MEMORANDUM AND ORDER*

SAFFELS, Senior District Judge, Sitting By Designation.

This matter is before the court on motions by defendants John M. Gibson, Gertrude W. Gibson, William R. Kidwell (Doc. 437), and Floyd R. Gibson (Doc. 431) for summary judgment on Counts I, breach of fiduciary duty, and II, negligence and/or gross negligence, of Resolution Trust Corporation's ("RTC's") complaint.[1] Floyd R. Gibson adopts and joins in the motion of the other three mentioned defendants. For the reasons set forth in this order, defendants' motions for summary judgment are granted in part and denied in part.

## FACTUAL BACKGROUND

RTC brought this action against former officers and directors of Blue Valley Federal Savings and Loan Association ("Blue Valley"). Blue Valley was a federally chartered, mutual savings and loan association. On or about February 16, 1989, the Federal Home Loan Bank Board ("FHLBB") determined that Blue Valley was insolvent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as conservator. Sometime thereafter, RTC became the conservator and then the receiver of Blue Valley.

Defendants argue that the court should grant their summary judgment motions on both Counts I and II because claims of breach of fiduciary duty · and simple negligence are legally insufficient under any factual circumstances. Defendants propose two theories in support of their motions. First, they claim that under 12 U.S.C. § 1821(k), RTC may pursue only claims against officers and directors based on their gross negligence. Second, they argue that if the savings clause of § 1821(k) allows state law to set the standard of liability, the relevant state's law, Missouri, does not allow directors to be liable on simple negligence.

## ANALYSIS

 A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.*

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *Green v. United States Dept. of Labor*, 775 F.2d 964, 973 (8th Cir.1985).

 Rule 56(c) requires the court to enter summary judgment against a party who fails to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. That is, whether there are any genuine factual issues that can be resolved only by a finder of fact because they

---

1. Defendants have also filed motions seeking a hearing on their summary judgment motions. Because the court has determined that oral argument would not be helpful in resolving the issues, the motions have been determined on the basis of the written memoranda of the parties. The defendants' motions seeking a hearing are therefore denied.

reasonably may be resolved in favor of either party. *Id.*

## I. WHETHER 12 U.S.C. § 1821(K) PROVIDES THAT RTC MAY PURSUE ONLY CLAIMS BASED ON GROSS NEGLIGENCE

RTC brings its claims under 12 U.S.C. § 1821(k). In pertinent part, § 1821(k) provides as follows:

> A *director or officer* of an insured depository institution *may be held personally liable* for monetary damages in any civil action ... *for gross negligence,* including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are *defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.*

12 U.S.C. § 1821(k) (emphasis added).

In an earlier order in this case, this court, following the Ninth and Tenth Circuit Courts of Appeal, held that § 1821(k) does not impose a national standard of gross negligence for officers and directors of financial institutions. *RTC v. Gibson,* 829 F.Supp. 1103 (W.D.Mo.1993) (citing *FDIC v. McSweeney,* 976 F.2d 532 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993) and *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992)).

■ Section 1821(k) does not preempt state law claims based on standards of liability below gross negligence. *McSweeney,* 976 F.2d at 537; *Canfield,* 967 F.2d at 446. As this court stated earlier,

> [t]he statute addresses those situations in which states passed laws attempting to immunize officers and directors of financial institutions from liability. To the extent a state statute insulates officers and directors from liability for gross negligence, the state statute is preempted, but state

law causes of action for less culpable conduct remain viable.

*Gibson,* 829 F.Supp. at 1109.

The language reproduced from the earlier order makes it clear this court previously adopted the interpretation of § 1821(k) followed by the Ninth and Tenth Circuits, the only two circuit courts to have ruled directly on state preemption. Accordingly, defendants' arguments are unpersuasive insofar as they rely on § 1821(k)'s preemption of state law simple negligence claims.

Additionally, for reasons explained in part II, section B of the memorandum, defendants' arguments are unpersuasive insofar as they rely on preemption of federal common law.

## II. WHETHER RTC'S ACTIONS ARE LEGALLY INSUFFICIENT UNDER "OTHER APPLICABLE LAW"

■ Although § 1821(k) does not prohibit claims based on simple negligence, it does not provide for them unless they arise "under other applicable law." In the instant case, the possible sources of "other applicable law" are Missouri law and federal common law. Therefore, if RTC is to be able to assert claims for breach of fiduciary duty and simple negligence, they must arise under Missouri law or federal common law.

Defendants argue that there is no applicable law under which RTC can recover upon proof of simple negligence or "simple breach" of fiduciary duty. Specifically, defendants contend that Missouri law bars such claims against officers and directors of savings and loans by its codification of the business judgment rule in R.S.Mo. § 369.109.4. Additionally, defendants contend that § 1821(k) preempts federal common law. Therefore, they conclude RTC may not maintain actions premised on culpability below gross negligence because no "other applicable law" supplies such actions.

### A. Missouri Law

RTC brings claims for breach of fiduciary duty and simple negligence and/or gross negligence under Missouri law. Defendants ar-

gue that Missouri recognizes neither (1) actions for breach of fiduciary duty in the absence of self-dealing nor (2) claims for simple negligence against officers and directors of savings and loans.

### (1) Breach of Fiduciary Duty

■ This court, as it stated in a previous order in this case, does not understand Missouri law to require RTC to prove self-dealing as part of its claim for breach of fiduciary duty. *Gibson,* 829 F.Supp. at 1110. Additionally, this court does not read *Forinash v. Daugherty,* 697 S.W.2d 294 (Mo.App.1985), to limit the concept of fiduciary duty to conduct involving self-dealing.

In *RTC v. Gershman,* 829 F.Supp. 1095, a recent case from the Eastern District of Missouri, RTC sued former officers and directors of a state chartered savings and loan association for breach of fiduciary duty. *Gershman,* 829 F.Supp. 1095, 1101–02 (E.D.Mo.1993). Although RTC failed to allege defendants breached their duty of loyalty, the court refused to dismiss the breach of fiduciary duty claim. *Id.* The court noted that most Missouri cases involving breach of fiduciary duty are premised on the duty of loyalty. *Id.* However, the court did not agree with defendants' contention that breach of the duty of loyalty is an essential element of a Missouri breach of fiduciary duty action. *Id.*

Defendants argue they are entitled to judgment as a matter of law because claims of breach of fiduciary duty absent self-dealing are insufficient under Missouri law. Defendants' arguments are unavailing insofar as they are premised on this interpretation of Missouri law.

### (2) R.S.Mo. § 369.109.4 and Federally Chartered Institutions

Chapter 369, §§ 369.010–369.369, of the Missouri Code contains the state's "Savings and Loan Law." R.S. Mo. § 369.010. Section 369.109.4 sets the standard of liability for officers and directors of savings and loans organized under Chapter 369. In pertinent part, § 369.109.4 provides as follows: "Directors and officers shall discharge the duties of their respective positions in good faith and

with that degree of diligence, care, and skill which prudent men would exercise under similar circumstances in like positions." R.S. Mo. § 369.109.4.

■ Defendants assert that § 369.109.4 codifies the business judgment rule as it applies to officers and directors of state chartered savings and loans. They further assert that § 369.109.4 insulates them, as officers and directors of a federally chartered savings and loan, from any RTC claim premised on less than gross negligence. Without deciding whether § 369.109.4 codifies the common law business judgment rule, this court rejects defendants' argument that § 369.109.4 extends to officers and directors of federally chartered institutions.

Blue Valley was a federally chartered savings and loan. It was not organized under Chapter 369 through compliance with § 369.109 nor was it converted to a Chapter 369 institution through compliance with § 369.074. Since Blue Valley neither organized as nor converted to an "association" as defined by § 369.014, it was never subject to the provisions of Chapter 369. Therefore, Chapter 369 and, more specifically, § 369.109.4 never applied to defendants and they cannot shield them now from liability for simple negligence.

### (3) The Missouri Common Law Business Judgment Rule

■ R.S. Mo. § 369.109.4 does not apply to defendants because Blue Valley was not an "association" within the meaning of the Missouri Savings and Loan Law. Therefore, even assuming R.S. Mo. § 369.109.4 requires a heightened showing of culpability, defendants, as officers and directors of a federally chartered savings and loan, cannot enjoy its shelter.

In addition to R.S. Mo. § 369.109.4, defendants argue that the common law business judgment rule provides protection from liability for conduct falling below gross negligence. They contend that the Missouri Supreme Court's statement of the business judgment rule, as articulated in *Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 851 (Mo.1960), applies to RTC's claims. Specifically, they claim that *Leggett* stands for

the proposition that RTC may not recover absent a showing of "fraud, bad faith, breach of trust, *gross mismanagement,* or ultra vires acts on the part of the officers and directors." *Leggett,* 342 S.W.2d at 851 (emphasis added).

■ Initially, it is necessary to mention that "Missouri courts do not recognize degrees of negligence and therefore do not distinguish between negligence and gross negligence." *Duncan v. Missouri Bd. for Architects,* 744 S.W.2d 524, 532 (Mo.App. 1988). See also *Fowler v. Park Corp.,* 673 S.W.2d 749, 755 (Mo. banc 1984) (stating that "[i]t also remains the law of Missouri that there are no legal degrees of negligence"); *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596, 603 (Mo.1968) (writing that "[o]ur Missouri courts, generally do not distinguish between negligence and gross negligence, as such, since they do not recognize degrees of negligence").

■ Because Missouri does not recognize the distinction between negligence and gross negligence, this court does not read *Leggett's* reference to "gross mismanagement" as an express indication that the Missouri business judgment rule bars suits based on simple negligence. This court can find no Missouri cases citing *Leggett* for the proposition that officers and directors are free from liability for all but gross mismanagement. Indeed, every subsequent Missouri case discussing the business judgment rule omits any reference to "gross mismanagement." When explaining the business judgment rule, most courts have relied on language similar to the following excerpt from *Saigh v. Busch,* 396 S.W.2d 9, 22 (Mo.App.1965), *cert. denied,* 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966): "The only time a court of equity will interfere, . . ., is when the matter complained of is ultra vires, illegal, fraudulent . . . or where the business judgment is exercised unfairly and in a dishonest manner."

Recently, in *McKnight v. Midwest Eye Institute,* the Missouri appellate court explained that "[t]he business judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority made in good faith, uninfluenced by any other consideration than the honest belief that the action subserves the best interests of the corporation. [citation omitted]." *McKnight,* 799 S.W.2d 909, 913 (Mo.App.1990). Furthermore, the appellate court explained that the business judgment rule immunizes officers and directors from court interference when they exercise independent discretion in good faith on matters within their authority. *Id.*

Additionally, in *Wolgin v. Simon,* the Eighth Circuit wrote that "[a]s a general proposition, Missouri courts have held that where the matter under consideration is one that calls for the business judgment or discretion of a corporation's board of directors the courts will not interfere so long as that judgment is exercised fairly and honestly. [Citation omitted]." *Wolgin,* 722 F.2d 389, 393 (8th Cir.1983).

A number of district courts have held government claims for simple negligence are barred by applicable state formulations of the common law business judgment rule. *FDIC v. Mintz,* 816 F.Supp. 1541, 1546 (S.D.Fla.1993); *RTC v. Norris,* 830 F.Supp. 351, 359 (S.D.Tex.1993); *FDIC v. Brown,* 812 F.Supp. 722, 725–26 (S.D.Tex.1992); *RTC v. Hecht,* 818 F.Supp. 894, 901 (D.Md.1992); *FSLIC v. Shelton,* 789 F.Supp. 1360, 1366–67 (M.D.La.1992); *RTC v. Holmes,* 1992 WL 533256, 1992 U.S.Dist. LEXIS 18962 (S.D.Tex. August 7, 1992). Essentially, these cases stand for the proposition that where the state's business judgment rule prohibits suits for simple negligence, the government is precluded from asserting simple negligence claims based on the state's law.

In *FDIC v. Mintz,* FDIC sued former officers and directors of a failed savings and loan for simple negligence. *Mintz,* 816 F.Supp. at 1542. The court, applying the Florida common law business judgment rule, held that defendants were not liable for simple negligence. *Id.* at 1546. The court based its holding on its conclusion that the Florida business judgment rule "raise[d] the standard of liability from simple to gross negligence." *Id.*

Additionally, in *FSLIC v. Shelton*, the court invoked the Louisiana business judgment rule to bar all claims for simple negligence against officers and directors. *Shelton*, 789 F.Supp. at 1365–1367. The court, following the Fifth Circuit's explanation of Louisiana law, applied the gross negligence standard when judging the acts of corporate officers and directors. *Id.* at 1365 (citing *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 237–238 (5th Cir. 1988)).

 Accordingly, this court looks to the Missouri business judgment rule to determine whether Missouri allows officers and directors to be sued on simple negligence. As previously noted, Missouri does not distinguish between negligence and gross negligence. However, this is not the same as to say that Missouri holds officers and directors liable for all types of conduct regardless of culpability. Indeed, the Missouri business judgment rule provides protection from court interference for conduct that comports with the standards articulated by the Fifth Circuit in *Wolgin* and the Missouri appellate courts in *McKnight* and *Saigh*.

This court believes that the Missouri business judgment rule provides shelter for conduct equivalent to what the parties have referred to as "simple negligence." In Missouri, negligence is defined as the failure to use the degree of care required under the particular circumstances. *Duncan*, 744 S.W.2d at 532. This definition, while clearly sufficient to cover extreme negligence, does not distinguish between what the parties have referred to as simple and gross negligence.

In *FDIC v. Brown*, the district court held that the Texas business judgment rule barred RTC's claims for simple negligence. *Brown*, 812 F.Supp. at 723. The court held that RTC could not collect damages from former directors unless it could prove "(1) that the conduct of the directors complained of was either ultra vires or fraudulent or (2) that the directors had a personal interest in the transactions complained of." *Id.* at 724. The court concluded that the Texas business judgment rule barred claims of simple, but not gross, negligence. *Id.* at 725.

According to *McKnight*, the business judgment rule protects officers and directors from liability for *intra vires* decisions made in good faith and uninfluenced by any consideration other than that they are acting in the best interests of the corporation. *McKnight*, 799 S.W.2d at 913. This statement of the business judgment rule is nearly identical to that reproduced by the court in *Brown*. As in *Brown*, this court believes that the Missouri business judgment rule bars claims for simple negligence. Thus, defendants are entitled to judgment as a matter of law on RTC's simple negligence claims in Count II.

## B. Preemption of Federal Common Law

 "[T]he appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law pre-empts state law." *City of Milwaukee v. Illinois*, 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981). When examining whether a federal statute preempts a state law, the court assumes that the federal statute does not supersede the state law unless that is the clear and manifest purpose of Congress. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). However, when deciding whether federal statutory or federal common law governs, the court does not require the same sort of evidence of a clear and manifest purpose to preempt. *City of Milwaukee*, 451 U.S. at 316–317, 101 S.Ct. at 1792. The test for preemption of federal common law is less stringent than that applied to state law because the former does not involve the same concerns over federalism. *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 638 (3rd Cir. 1990).

 "In determining whether a federal statute pre-empts common law causes of action, the relevant inquiry is whether the statute '[speaks] directly to [the] question' otherwise answered by federal common law." *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236–237, 105 S.Ct. 1245, 1252, 84 L.Ed.2d 169 (1985), *rehearing denied*, 471

U.S. 1062, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985). In *City of Milwaukee v. Illinois*, the Supreme Court explained that "the question whether a previously available federal common-law action has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *City of Milwaukee*, 451 U.S. at 315 n. 8, 101 S.Ct. at 1792. Indeed, in *County of Oneida v. Oneida Indian Nation*, the Supreme Court later stated that "federal common law is used as a 'necessary expedient' when Congress has not 'spoken to a particular issue.'" *County of Oneida*, 470 U.S. at 237, 105 S.Ct. at 1253.

 Defendants argue that § 1821(k) preempts all federal common law claims for conduct amounting to less than gross negligence. They contend that a contrary interpretation would render meaningless the gross negligence language of § 1821(k). No court of appeals has dealt specifically with the issue, although there is dictum from the Ninth Circuit opposite to defendants' position. *FDIC v. McSweeney*, 976 F.2d 532, 538 (9th Cir.1992) (stating in both a footnote and in the body of the opinion that the savings clause preserves federal common law). The district courts are divided.[2] However, this court believes § 1821(k) does not preempt federal common law.

Whether § 1821(k) preempts federal common law "involves an assessment of the scope" of § 1821(k) and "whether the scheme established by Congress addresses the problem formerly governed by the common law." Specifically, the question is whether § 1821(k) speaks directly to the particular issue formerly answered by the federal common law.

Section 1821(k)'s savings clause is critical to the analysis. The clause commands that "[n]othing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k) (1989). Defendants interpret this clause, and the phrase "other applicable law" in particular, to exclude federal common law. Yet, as the lower court wrote in *McSweeney*, "the plain meaning of 'applicable law' may not be restricted to one particular law (i.e., FIR-REA); rather standard statutory construction dictates that 'applicable law' is all relevant law not otherwise excluded. [citation omitted]. Thus, it is more sensible to read the [savings clause] as a reference to all other applicable state and federal law." *FDIC v. McSweeney*, 772 F.Supp. 1154, 1159 (S.D.Cal.1991), *aff'd*, 976 F.2d 532 (9th Cir. 1992).

Section 1821(k) does not exclude federal common law under the principles of *City of Milwaukee* or *County of Oneida*. Indeed, the savings clause preserves the federal government's common law causes of action against officers and directors of depository institutions. In *FDIC v. McSweeney*, the Ninth Circuit notes that "the express saving language preserving the FDIC's rights 'under other applicable law' would preserve its preexisting rights under the federal common law." *McSweeney*, 976 F.2d at 538 n. 9. Moreover, the Ninth Circuit states that the savings clause preserves the government's right to sue for negligence "whether under state or federal common law." *Id.* at 538.

In *City of Milwaukee*, the Supreme Court determined that the Federal Water Pollution

---

**2.** A number of district courts accept defendants' arguments that § 1821(k) preempts federal common law. *RTC v. Farmer*, 823 F.Supp. 302 (E.D.Pa.1993); *FDIC v. Mintz*, 816 F.Supp. 1541 (S.D.Fla.1993); *FDIC v. Gonzalez–Gorrondona*, 833 F.Supp. 1545 (S.D.Fla.1993); *RTC v. Hecht*, 818 F.Supp. 894 (D.Md.1992). *See also RTC v. Hess*, 820 F.Supp. 1359, 1364 n. 2 (D.Utah 1993) (listing several additional cases and noting that these courts based their holdings on either or both of two arguments: (1) § 1821(k) eliminates the need for federal common law; (2) preserving federal common law robs § 1821(k) of any meaning). However, one such case, *FDIC v. Mintz*, upon which defendants rely, notes that the majority of cases hold that § 1821(k) preempts neither federal nor state law.

Additionally, there are a number of district court cases supporting RTC's position that federal common law survives. *Hess*, 820 F.Supp. at 1363–1364; *FDIC v. Nihiser*, 799 F.Supp. 904 (C.D.Ill.1992). *See also FSLIC v. Shelton*, 789 F.Supp. 1360 (M.D. La.1992); *FDIC v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal.1991), *aff'd*, 976 F.2d 532 (9th Cir.1992); *FDIC v. Black*, 777 F.Supp. 919 (W.D.Okla.1991); *FDIC v. Fay*, 779 F.Supp. 66 (S.D.Tex.1991).

Control Act Amendments of 1972 ("Amendments") preempted the federal common law of nuisance. The Amendments were intended to establish an "all-encompassing program of water regulation." *City of Milwaukee*, 451 U.S. at 318, 101 S.Ct. at 1793. The unusual comprehensiveness of the Amendments "strongly suggest[ed] that there [was] no room for courts to attempt to improve on that program with federal common law." *Id.* at 319, 101 S.Ct. at 1793. Indeed, the Supreme Court explained that "the comprehensive nature of [the Amendments] suggests that it was the *exclusive* source of *federal law.*" *Id.* at 319 n. 14, 101 S.Ct. at 1793 n. 14.

In the instant case, unlike *City of Milwaukee*, the statute incorporates the existing federal common law with the language of the savings clause. This court recognizes that "it is for Congress, not the federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *Id.* at 317, 101 S.Ct. at 1792. With the savings clause, Congress articulates its intention to preserve the government's rights under "other applicable law." Not only does the savings clause command that those rights be preserved, but also that they be unimpaired and unaffected by the operation of § 1821(k).

This court interprets the broad language of the savings clause as including, not excluding, the government's rights under pre-existing federal common law. This interpretation is consistent with the Tenth Circuit's reading of *Patterson v. Shumate* in footnote four from *FDIC v. Canfield*. In *Patterson*, the Supreme Court interprets the phrase "applicable nonbankruptcy law" as including "any relevant nonbankruptcy law," both state and federal. *Patterson v. Shumate*, —— U.S. ——, ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). In *Canfield*, the Tenth Circuit noted that the same principle "applies with equal force" to the phrase "other applicable law" in § 1821(k). *Canfield*, 967 F.2d at 446 n. 4. Thus, "other applicable law" should be read to include all relevant law, regardless of whether it is state or federal.

Two additional reasons support interpreting § 1821(k) as incorporating, and not preempting, federal common law: (1) the

purposes of FIRREA; and (2) the plain meaning of the phrase "other applicable law."

Defendants' interpretation is not in accord with the purposes of FIRREA. Congress passed FIRREA in response to the banking crisis. "Through FIRREA, Congress intended to address bank failures caused by officer and director misconduct." *FDIC v. Isham*, 777 F.Supp. 828, 831 (D.Colo.1991). As the Ninth Circuit noted in *McSweeney*, "[t]he purposes of FIRREA, as expressed by Congress in the statute's opening provision, include '*strengthening the enforcement powers* of federal regulators of depository institutions' and '*strengthening the civil sanctions* and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.'" *McSweeney*, 976 F.2d at 537 (quoting Pub.L. No. 101–73, § 101(9), (10), 103 Stat. 183, 187 (1989) (emphasis added) (*reprinted in* 12 U.S.C. § 1811 note (Supp. II 1990) (Purposes of 1989 Amendment)). Thus, the stated purposes of FIRREA are to strengthen the powers of the government in relation to officers and directors engaging in harmful misconduct.

As opposed to strengthening the enforcement powers of the RTC, defendants interpret § 1821(k) as weakening those powers. Under defendants' interpretation, § 1821(k) frees officers and directors from the federal common law standards of liability and thereby affords them greater protection than they enjoyed prior to the enactment of § 1821(k). Interpreting § 1821(k) to strip the government of its federal common law powers, under which it could hold officers and directors liable for less than gross negligence, is inconsistent with Congress' stated purposes. Indeed, language from the Senate Report indicates § 1821(k) is not meant to impede the government's other powers. The Report states as follows:

> This subsection does not prevent the FDIC from pursuing claims ... under other applicable federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory

such as breach of contract or breach of fiduciary duty. 135 Cong. Rec. 56912 (June 19, 1989).

■■■■ A court should construe a statute consistently with its object and policy. *Dole v. United Steelworkers,* 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990). *See also FDIC v. Nihiser,* 799 F.Supp. 904, 908 (C.D.Ill.1992) (holding that "[a] court must construe a statute to effectuate its purposes"); *FDIC v. Isham,* 777 F.Supp. 828, 831 (D.Colo.1991) (holding that "[a] statute also must be construed to effectuate its purposes as defined by congress"). Section 1821(k) embodies an effort to strengthen the position of the federal government when dealing with thrifts. Reading § 1821(k) to strip regulators of their pre-existing powers undermines FIRREA's purpose. *See Nihiser,* 799 F.Supp. at 908 (stating that "[i]t would distort FIRREA's purpose to interpret it as making it more difficult for the FDIC to recover from negligent directors and officers"). Therefore, this court refuses to read § 1821(k) in a manner that frustrates its stated purpose.

Additionally, defendants' interpretation is inconsistent with the plain meaning of § 1821(k). They read "other applicable law" as an exclusion of federal common law. However, in *Canfield,* the Tenth Circuit explained that:

> In construing a statute, reliance must be placed on an unambiguous statute's 'evident' meaning. [Citation omitted]. With this in mind, we believe that 'other applicable law' means all 'other applicable law.' Under the statute then, any other law providing that an officer or director may be held liable for simple negligence survives; such a law would be an 'other applicable law,' and construing the statute to bar its application would 'impair' the FDIC's rights under it.

*Canfield,* 967 F.2d at 446.

## C. Applicable Federal Common Law

■■■■ RTC brings claims for breach of fiduciary duty and simple negligence and/or gross negligence under federal common law. Prior to the enactment of § 1821(k), courts recognized a cause of action against officers and directors of federally chartered savings and loans for breach of fiduciary duty, but not for negligence. Thus, RTC can state a claim for breach of fiduciary duty, but not for negligence, under federal common law.

### (1) Breach of fiduciary duty

Prior to § 1821(k), courts recognized a federal common law cause of action against officers and directors of federally chartered savings and loans for breach of fiduciary duty. *FSLIC v. Kidwell,* 716 F.Supp. 1315 (N.D.Cal.1989); *Rettig v. Arlington Hgts. Fed. Sav. and Loan Ass'n,* 405 F.Supp. 819, 826–827 (N.D.Ill.1975); *City Fed. Sav. and Loan Ass'n v. Crowley,* 393 F.Supp. 644 (E.D.Wis.1975). But see *Amerifirst Bank v. Bomar,* 757 F.Supp. 1365 (S.D.Fla.1991) (refusing to recognize a federal common cause of action for breach of fiduciary duty). The savings clause of § 1821(k) states that § 1821(k) does not "impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k). In the preceding section, this court interpreted this language to include, not exclude, pre-existing federal common law. Since the federal common law cause of action for breach of fiduciary duty pre-existed § 1821(k), the savings clause preserves it.

■■■ Under federal common law, a fiduciary's duty of care is that degree of care which an ordinarily prudent and diligent person would exercise under similar circumstances. *Kidwell,* 716 F.Supp. at 1317 (quoting *Briggs v. Spaulding,* 141 U.S. 132, 152, 11 S.Ct. 924, 931, 35 L.Ed. 662 (1891)). Therefore, this court rejects defendants arguments insofar as they are premised on the legal insufficiency, under any factual circumstances, of RTC's claims for breach of fiduciary duty.

It is necessary to mention that the Eighth Circuit, in *FSLIC v. Capozzi,* refused to apply federal common law to an action by the Federal Savings and Loan Insurance Corporation against the directors of a *state chartered* thrift. *Capozzi,* 855 F.2d 1319, 1325 (8th Cir.1988), *vacated on other grounds,* 490 U.S. 1062, 109 S.Ct. 2058, 104 L.Ed.2d 624 (1989). In the instant case, unlike *Capozzi,*

the savings and loan was federally, not state, chartered. Therefore, the federal interests supporting the federal common law are more directly applicable in this case than in *Capozzi*. Additionally, since federal common law fiduciary duty applied to federally chartered savings and loans prior to § 1821(k), and § 1821(k) commands that it not be read to "impair or affect" RTC's rights under other applicable law, federal common law fiduciary duty survives and is applicable to the conduct of the officers and directors of Blue Valley, a federally chartered savings and loan.

### (2) Negligence

Prior to § 1821(k), actions for negligent mismanagement did not exist at federal common law. In *FSLIC v. Kidwell*, the district court held that there was no federal common law cause of action for negligence against officers and directors of federally chartered savings and loans. The court explained that "[t]he federal interest in uniform regulation of savings and loan associations supports recognition of a federal common law cause of action for breach of fiduciary duty, but not for negligence." *Kidwell*, 716 F.Supp. at 1317. Similarly, the district court in *First Hawaiian Bank v. Alexander* refused to recognize a federal common law cause of action for negligence, although it did recognize one for breach of fiduciary duty. *First Hawaiian*, 558 F.Supp. 1128, 1131 (D.Hawaii 1983). As in *Kidwell*, the court in *First Hawaiian* believed that there "is no interest in national uniformity" which would be served by a federal common law of negligence. *Id.*

▮ This court is persuaded that the government did not have a federal common law action for negligence prior to the enactment of § 1821(k). Since the government did not have a federal common law negligence claim prior to § 1821(k), no such right existed for the savings clause to preserve. Defendants are correct in arguing that RTC's claims for simple negligence under federal common law are insufficient under any factual circumstances. Therefore, defendants are entitled to judgment as a matter of law insofar as RTC's simple negligence claims are premised on federal common law.

## CONCLUSION

Defendants' motions for summary judgment focus exclusively on the standard of liability to which they will be held at trial. They argue they are entitled to judgment as a matter of law on Counts I and II insofar as RTC brings claims premised on culpability below gross negligence. Essentially, defendants argue that claims brought for conduct below gross negligence are legally insufficient under any factual circumstances.

Defendants' motions are granted as to RTC's claims for simple negligence in Count II, but denied as to the remaining Count II claims. Additionally, defendants' motions as to Count I are denied.

**IT IS BY THE COURT THEREFORE ORDERED** that defendants' motions for summary judgment (Docs. 431 & 437) are denied as to Count I.

**IT IS FURTHER ORDERED** that the defendants' motions for summary judgment are granted as to RTC's simple negligence actions in Count II, but denied as to the remaining claims (Docs. 431 & 437).

**IT IS FURTHER ORDERED** that defendants' request for a hearing on their summary judgment motions (Docs. 431 & 437) are denied.